## CHICAGO, B. & Q. R. CO. et al. v. UNITED STATES et al.

No. 353.

District Court, E. D. Kentucky, Lexington.

May 21, 1945.

Richard C. Stoll and Wallace Muir, both of Lexington, Ky., Eldon Martin, C. A. Conway, Larry H. Dugan, and Charles W. Stadell, all of Chicago, Ill., Howard W. Vesey, of Washington, D. C., Richard F. Wood, of St. Louis, Mo., and E. B. Wilkinson and J. A. Moran, both of Chicago, Ill., for plaintiffs and intervenors on behalf of plaintiffs.

Edward Dumbauld and David O. Mathews, Sp.Assts. to the Atty. Gen., Daniel W. Knowlton and Nelson Thomas, Interstate Commerce Commission, both of Washington, D. C., Claude P. Stephens, U. S. Atty., of Lexington, Ky., Elden S. Dummit, Atty. Gen. of Kentucky, and M. B. Holifield, Asst. Atty. Gen. of Kentucky, J. E. Marks and C. S. Landrum, both of Lexington, Ky., and W. A. Northcutt, of Louisville, Ky., for defendants and intervenors on behalf of defendants.

Before HAMILTON, Circuit Judge, and FORD and MILLER, District Judges.

FORD, District Judge.

The plaintiffs and numerous interested parties who have been permitted to intervene as plaintiffs seek a decree declaring null and void an order of the Interstate Commerce Commission entered December 11, 1944, and a permanent injunction restraining, enjoining and suspending the execution and enforcement thereof. 38 Stat. 208, 219, 220, 28 U.S.C.A. §§ 41(8), 41(28), 43 and 48.

The relief sought by the plaintiffs is opposed by the defendant, United States, and by the intervening defendants, Interstate Commerce Commission, Railroad Commission of Kentucky, Kentucky Coal Agency and Louisville & Nashville Railroad Company.

The provisions of the challenged order, as subsequently amended in respect to its effective date, require that the plaintiffs cease and desist, on or before June 30, 1945, and thereafter, from publishing, demanding or collecting for the transportation of bituminous coal, in car loads, from points in what is known and referred to in the record as the "western Kentucky field", to Chicago, Illinois, and intermediate destinations in Illinois and Indiana taking the same rates, a rate exceeding $2.30 per net ton and requiring that, on or before that date, upon not less than ten days' notice to

the Commission and the general public, they establish and thereafter maintain and apply to such traffic a rate which shall not exceed $2.30 per net ton.

In compliance with chapter 32 of the Act of October 22, 1913, 38 Stat. 220, 28 U.S.C.A. § 47, a District Court of three judges was duly convened for the final hearing of the case. The plaintiffs introduced in evidence a certified copy of the testimony and other proceedings before the Commission. The case is now submitted for judgment upon that record.

The order here involved was made by the Commission in a proceeding originated by a complaint filed by the Commonwealth of Kentucky and the Railroad Commission of Kentucky on March 10, 1941, in which it was alleged that the rate then in effect on bituminous coal in car loads from the Western Kentucky field to Chicago and intermediate points taking the same rates was $2.40 per ton, and the rate in effect on bituminous coal in car loads from the Southern Illinois coal field to the same destination was $2.05 per ton; that such rate from the Western Kentucky field to the destinations named was unjust and unreasonable and in violation of section 1 of the Interstate Commerce Act, 49 U.S.C.A. § 1, and was unduly prejudicial to the producers in Western Kentucky and unduly preferential of the producers in Southern Illinois "to the extent that the rates from Western Kentucky exceed those from Southern Illinois by more than 25 cents per net ton", in violation of sections 3 and 13 of the Act, 49 U.S.C.A. §§ 3, 13. The complainants sought an order of the Commission requiring the railroads participating in the transportation to establish, in lieu of the prevailing rates, such other rates as the Commission might deem to be just and reasonable, and non-prejudicial to the operators in Western Kentucky and non-preferential to the operators in Southern Illinois. The plaintiffs and their associate intervenors were parties to the proceedings before the Commission and vigorously opposed the action.

A proceeding by the Illinois Coal Traffic Bureau attacking certain existing rates from Southern Illinois to destinations in the Northwest as unduly prejudicial to Southern Illinois and unduly preferential of Western Kentucky was filed with the Commission on July 2, 1941, and was consolidated with the Kentucky case for hearing and disposition but, since the action of the Commission in dismissing the complaint of the Illinois Coal Traffic Bureau is not involved in this case, no further reference need be made to it.

After extensive hearings, the Commission made its report on December 22, 1942, finding that the rate of $2.40 from Western Kentucky was and for the future would be unreasonable to the extent that it exceeded $2.30 per net ton, and an order was entered accordingly. Thereafter, upon petitions filed by plaintiffs (then defendants) the case was reopened for rehearing, reargument and reconsideration and a rehearing was held in November and December 1943 which resulted in the Commission filing a second report on December 11, 1944, affirming the original finding. Pursuant thereto the Commission entered the order now in issue.

▆▆ Bearing in mind that we may not disturb the finding of the Commission upon the factual issue of reasonableness, except upon a showing that it was made without a hearing, is unsupported by evidence, is without rational basis, exceeds constitutional limits, rests on an erroneous construction of the statute or, for some other reason, amounts to an abuse of power, Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 481, 38 S.Ct. 383, 62 L.Ed. 831; Virginian Ry. Co. v. United States, 272 U. S. 658, 665, 47 S.Ct. 222, 71 L.Ed. 463, we proceed to the consideration of the questions presented, without reviewing the prolonged controversy which has prevailed for many years over the same rates except to say that the history of the controversy is another of many demonstrations of the wisdom of the narrow scope within which Congress has confined judicial participation in the rate making process for, "The process of rate making is essentially empiric. The stuff of the process is fluid and changing—the resultant of factors that must be valued as well as weighed. Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems." Board of Trade v. United States, 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432.

Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), provides "Whenever an investigation shall be made by said commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the

commission, together with its decision, order, or requirement in the premises; * * *." Section 17(1), (3), of the Act, 49 U.S.C.A. § 17(1), (3), makes it clear that "a majority of the commission shall constitute a quorum for the transaction of business" with power and authority by a majority thereof to exercise all the jurisdiction and powers conferred by law upon the Commission.

■ It appears from the record that the hearings in this proceeding in 1942 and in 1944 were held before nine of the eleven members of the Commission. The reports of 1942 and 1944 were made by four of the nine members who heard the case and in each instance one member "concurred in the result" of the report and four members dissented. The question is raised as to whether a report by four of nine members of the Commission sitting at a hearing, with a fifth member concurring in the result, constitutes a "report by the Commission" within the meaning of the Statute. We interpret the statement by the fifth Commissioner that he "concurs in the result" of both reports filed in this case to mean that, while he does not assent to all the comments or observations made therein, he is, nevertheless, sufficiently in accord with the rationale of them to enable him to agree that Western Kentucky's rate to Chicago and intermediate destinations taking the same rates is unreasonable to the extent stated and that an order for the future should be entered accordingly. In our opinion, as will be later pointed out, this is the only finding indispensable to the validity of the Commission's order and concurrence in both reports as to this essential finding by five of the nine participating members of the Commission is sufficient to constitute them "reports by the Commission" within the meaning of the Statute.

Attacks upon the order of the Commission upon the ground that it indirectly reverses prior orders of the Commission and also that it constitutes determination of an issue not tried in the case and not tendered by the pleadings, are without merit.

■ The issue as to whether the rate from Western Kentucky was unreasonable was squarely made by the pleadings. It is well settled that orders of the Commission are not res adjudicata for "no extensive rate structure can be made perfect nor can any rate structure be made permanent in any real sense in a changing world", Board of Trade v. United States, 314 U.S. 534,

544, 62 S.Ct. 366, 371, 86 L.Ed. 432 and therefore "this court has no concern * * * with the alleged inconsistency with findings made in other proceedings * * *." Virginian Ry. Co. v. United States, 272 U.S. 658, 665, 47 S.Ct. 222, 225, 71 L.Ed. 463.

■ Following the first report of the Commission in 1942, holding the rate of $2.40 per ton unreasonable, the plaintiffs and intervenors (then defendants) sought a rehearing upon the ground, among others, that "the Western Kentucky complainants abandoned the allegation contained in their complaint that the rate of $2.40 per ton * * * is unjust and unreasonable * * *," and asserted that "this fact was admitted at the original hearing by counsel for the Western Kentucky complainant, (R. 34)." The implication was that the petitioners for rehearing, by reason of the admission of the complainants' attorneys, had been misled into assuming that the issue of reasonableness of the rate was abandoned and consequently they did not have a fair hearing or fair opportunity to present evidence upon that issue. By granting the rehearing and affording the petitioners additional opportunity to introduce such evidence upon the issue as they desired, the case is stripped of any element of surprise or possible prejudice by reason of complainant's admissions as to the issue to be tried. The power as well as the duty of the Commission to investigate and determine whether a rate will in the future be unjust or unreasonable, conferred by section 15(1) of the Act, 49 U.S.C.A. § 15(1), may in no wise be curtailed or circumscribed by admissions of the parties in argument or pleadings. Cincinnati, etc., R. Co. v. Interstate Commerce Commission, 206 U.S. 142, 149, 150, 27 S.Ct. 648, 51 L. Ed. 995.

The principal problems with which we are confronted are whether the order of the Commission is supported by an adequate finding in respect to the basic or quasi-jurisdictional fact upon which the exercise of its statutory power depends and, if so, whether or not such essential finding rests upon a rational basis and is supported by substantial evidence of record.

In United States v. B. & O. R. Co., 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587, after pointing out the single primary question of fact upon which a finding by the Commission was essential to the exercise

of its statutory power, the Court commented upon the distinction between findings of fact which are indispensable and others which are not essential and after referring to State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291, said: "In the Florida case the legal distinction was pointed out between what may be termed quasi jurisdictional findings, there held to be indispensable, and the 'complete statement of the grounds of the Commission's determination' which was declared in Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86, 51 S.Ct. 1, 75 L. Ed. 221, to be desirable for a proper consideration of the case in the courts. The lack of such a complete statement, while always regrettable, because unnecessarily increasing the labor of the reviewing court (compare Virginian Ry. v. United States, 272 U.S. 658, 675, 47 S.Ct. 222, 71 L.Ed. 463), is not fatal to the validity of the order. It is true that formal and precise findings are not required, under section 14(1) of the Interstate Commerce Act * * *, which declares that the report 'shall state the conclusions of the Commission together with its decision.' Compare Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 487, 38 S.Ct. 383, 62 L.Ed. 831; Meeker [& Co.] v. Lehigh Valley R. Co., 236 U.S. 412, 428, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691, P.U.R. 1915D 1072. That provision relieves the Commission from making comprehensive findings of fact similar to those required by Equity Rule 70½ * * *. But section 14(1) does not remove necessity of making, where orders are subject to judicial review, quasi jurisdictional findings essential to their constitutional or statutory validity." [293 U.S. 454, 55 S.Ct. 273.]

■■ In the light of this authority, it appears that a finding of the ultimate basic fact is all that is indispensable to the Commission's exercise of the statutory power invoked in this proceeding. As a prerequisite to the validity of its orders, the Commission is not compelled to report special findings as to underlying or subordinate facts such as were formerly required by Equity Rule 70½, 28 U.S.C.A. § 723 appendix, and now required by Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The only basic or quasi-jurisdictional fact, a finding in respect to which is essential to the exercise of the statutory power of the Commission to reduce the established rate involved in this case and prescribe a lower one for the future, is the fact that the subsisting rate "is or will be unjust or unreasonable." Sec. 15(1) of the Act, 49 U.S. C.A. § 15(1).

■ At the conclusion of the first report of the Commission of December 22, 1942, it is said: "We find that, under the circumstances here presented, the assailed rate to Chicago and intermediate destinations, for the future will be unreasonable to the extent that it may exceed $2.30 plus the increase as authorized on March 2, 1942, * * *."

This finding was restated in the final report of December 11, 1944, in these words: "It is clear * * * that Western Kentucky's rates to Chicago and intermediate destinations taking the same rates is unreasonable to the extent that it is based upon a differential of more than 25 cents over Southern Illinois."

We are of the opinion that the reports of the Commission fully comply with the requirements of the Act in respect to quasi-jurisdictional finding.

We turn to the consideration of the question as to whether the finding so made is supported by substantial evidence of record.

The Commission indicated its approach to the problem with which it was confronted by the statement:

"The Western Kentucky and Southern Illinois groups are geologically and commercially a part of the so-called midwestern field, embracing 13 other major groups, namely, the Northern Illinois, Danville, Peoria, Fulton, Central Illinois, Centralia, Belleville, and Du Quoin groups in Illinois and the Brazil-Clinton, Linton-Sullivan, Princeton, Boonville, and Evansville groups in Indiana, Western Kentucky being the southernmost group in the entire field. * * *

"The rates from the points in the midwestern field, particularly to Chicago, have long been based on a group and differential adjustment."

It is therefore not unexpected that in testing the reasonableness of the rates for transportation of bituminous coal in car loads from the Western Kentucky field to Chicago, the Commission should turn to a comparison of the rates on the same commodity from other points in the midwestern field to Chicago as well as the rate adjustments reflected in the differentials between

the various groups. There is evidence of record showing the various rates and distances from points in the midwestern field to Chicago and the existing differentials. The evidence is sufficient to support the Commission's conclusion, in respect to the rate from Western Kentucky to Chicago, that "its differentials over the other groups are higher, distance considered, than those existing between such other groups." The Commission, however, did not rest its determination of the issue upon this factor alone but merely considered it along with other pertinent factors. There was evidence before the Commission relative to transportation conditions in that field, the nature and extent of the transportation service rendered by the carriers and as to the effect of the subsisting rates on the movement of traffic from Western Kentucky and Southern Illinois to Chicago. The reports show that the Commission gave due consideration to all of these factors in reaching its determination.

█ Section 15a(2) of the Act, 49 U.S.C.A. § 15a(2), provides that "in the exercise of its power to prescribe just and reasonable rates the Commission shall give due consideration, among other factors, to the effect of rates on the movement of traffic by the carrier or carriers for which the rates are prescribed; * * *." Congress has not prescribed the "other factors" to be considered by the Commission in the exercise of its power to fix just and reasonable rates. The determination of the issue of fact in respect to reasonableness as well as the choice of the standard upon which the determination is to be made in each particular case, is left to the informed judgment of the Commission, a body "experienced in such matters and familiar with the complexities, intricacies, and history of rate-making in each section of the country." Louisville & Nashville R. Co. v. United States, 238 U.S. 1, 16, 35 S.Ct. 696, 700, 59 L.Ed. 1177; Virginian Ry. Co. v. United States, 272 U.S. 658, 665, 666, 47 S.Ct. 222, 71 L.Ed. 463; Youngstown Sheet & Tube Co. v. United States, 295 U.S. 476, 480, 55 S.Ct. 822, 79 L.Ed. 1553.

█ We think the essential basic or quasi-jurisdictional finding made by the Commission in this case rests upon a rational basis and is supported by substantial evidence of record.

The plaintiffs also challenge numerous other statements, comments and conclu-sions, found in the final report, on the ground that they are not supported by substantial evidence and are contrary to substantial and uncontradicted evidence introduced by the plaintiffs (then defendants) in the proceeding. (See sub-paragraphs 1 to 17, inclusive, of Paragraph X of the Petition). We regard the expressions to which the plaintiffs' attacks are thus directed as merely subsidiary or incidental, expository statements of the grounds of the Commission's determination. None of them are basic or quasi-jurisdictional under the requirements of the Act and the lack of them would not be fatal to the validity of the order, as pointed out in United States v. B. & O. R. Co., supra.

█ Having reached the conclusion that the essential finding of the Commission rests upon a rational basis and is supported by substantial evidence of record, in the absence of a showing that the Commission acted without a fair hearing, in excess of constitutional limitations or under an erroneous construction of controlling statutes, the task of judicial review is at an end. It is not within the province of the court to scrutinize the record for supporting evidence as to the correctness or accuracy of subsidiary or incidental findings stated in the Commission's report which merely serve to reflect and elucidate the reasoning by which the ultimate determination was reached.

We find no support in the record for the plaintiffs' contentions that the Commission failed to consider material evidence pertinent to the issue or that it disregarded uncontradicted evidence of record or otherwise acted arbitrarily or capriciously. It does not appear that in the exercise of its powers and duties it proceeded upon an erroneous interpretation or construction of any provision of the Statute. The order of the Commission was made after full and fair hearings. It exceeds no constitutional limits. It resulted from no abuse of power.

For the reasons stated, the relief sought should be denied and the petition dismissed.

### Findings of Fact.

1. The reports in this case were made by four of nine members of the Interstate Commerce Commission who heard the case, one member concurred in the result of the reports and the four other participating members dissented.

2. The question whether the rate from Western Kentucky to Chicago and inter-

mediate points taking the same rates was unreasonable was an issue of fact presented before and duly tried by the Commission.

3. The finding of fact made by the Commission that, under the circumstances here presented, "Western Kentucky's rates to Chicago and intermediate destinations taking the same rates is unreasonable to the extent that it is based upon a differential of more than 25 cents over Southern Illinois", rests upon a rational basis and is supported by substantial evidence of record.

4. Plaintiffs' contentions that the Commission failed to consider material evidence pertinent to the issue, that it disregarded uncontradicted evidence of record or otherwise acted arbitrarily or capriciously are without merit.

5. The order of the Commission was made after full and fair hearings.

## Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. A majority of the eleven members of the Interstate Commerce Commission constitutes a quorum for the transaction of business with power and authority, by a majority thereof, to exercise all the jurisdiction and powers conferred by law upon the Commission.

3. The report made herein by four of the nine members of the Commission who heard the proceeding, with a fifth member concurring in the result, constitutes a "report by the Commission", within the meaning of section 14(1) of the Interstate Commerce Act.

4. Orders of the Interstate Commerce Commission are not res adjudicata and therefore attacks upon the order of the Commission in this case, on the ground that it indirectly reverses prior orders, are without merit.

5. The power and duty of the Commission to investigate and determine whether a rate is or in the future will be unjust or unreasonable, conferred by section 15(1) of the Act, may in no wise be curtailed or circumscribed by admission of the parties to a rate adjustment proceeding.

6. The finding of the Commission in this case as to the essential basic or quasi-jurisdictional fact is adequate.

7. Except as provided in section 15a(2) of the Act, the factors to be considered by the Commission in the determination of the issue as to the reasonableness of rates, as well as the choice of the standard upon which the determination is to be made in a particular case, has been left by Congress to the informed judgment of the Commission.

8. The Court may not disturb the finding of the Commission upon the factual issue of reasonableness except upon a showing that it was made without a hearing, is unsupported by evidence, is without rational basis, exceeds constitutional limits, rests upon an erroneous construction of the Interstate Commerce Act or for some other reason amounts to an abuse of power.

9. As a prerequisite to the validity of its orders, in this type of case, the Commission is not compelled to report special findings as to underlying or subordinate facts such as were formerly required by Rule 70½ and now required by Rule 52, Federal Rules of Civil Procedure.

10. It is not within the province of the Court to scrutinize the record for supporting evidence as to the correctness or accuracy of subsidiary or incidental findings stated in the Commission's report which merely serve to reflect and elucidate the reasoning by which the ultimate determination was reached.

11. It does not appear from the record that in the exercise of its powers and duties in this case the Commission proceeded upon any erroneous interpretation or construction of the Interstate Commerce Act or any other applicable law.

12. The order of the Commission in this case does not exceed constitutional limits and so far as appears from the record resulted from no abuse of power.

13. The injunction herein sought should be denied and the petition is dismissed.

Attorneys for the defendants will prepare, serve and submit for entry a form of judgment in conformity herewith.

HAMILTON, Circuit Judge, and MILLER, District Judge, concur.