E. W. PORTER, as Commissioner of the Department of Finance of the State of Idaho, Appellant, v. CANYON COUNTY FARMERS' MUTUAL FIRE INSURANCE COMPANY, a Corporation, Respondent.

[263 Pac. 632.]

BANKS AND BANKING—PLEDGE OF ASSETS TO SECURE DEPOSITS—VALIDITY.

    1. Contract whereby bank attempted to hypothecate assets consisting of warrants as security for deposit was void under Laws 1925, chap. 133, sec. 39, and not merely illegal.

    2. Commissioner of department of finance in charge of insolvent closed bank stands as trustee to protect rights of all claimants, particularly those of depositors and general creditors.

Argument for Appellant.

3. Depositor accepting insolvent bank's assets, consisting of warrants as security for deposit, in violation of Laws 1925, chap. 133, sec. 39, prohibiting giving of security for deposit, could acquire no greater right than that inuring to any other general depositor as such, since such equity as it might claim under its pledge agreement rested upon nullity.

4. Commissioner of department of finance in charge of insolvent bank was not estopped to demand recovery of warrants pledged by bank as security for deposit, in violation of Laws 1925, chap. 133, sec. 39, where he did not rescind or offer to return defendant's deposit, since doctrine of estoppel has no application to contract void because it violates an express mandate of law or dictates of public policy.

5. Depositor could not retain assets consisting of certain warrants which insolvent bank attempted to hypothecate to depositor as security for deposit, in violation of Laws 1925, chap. 133, sec. 39, and commissioner in charge of insolvent bank could recover same.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to recover warrants pledged to secure deposits. Judgment for defendant. *Reversed and remanded.*

Scatterday & Stone, for Appellant.

State banks are prohibited by the laws of Idaho from giving security upon private deposits, any attempted pledge in violation of such law is void and upon the failure of such bank the commissioner of finance is entitled to the return of assets pledged in violation thereof. (1925 Sess. Laws, chap. 133, sec. 39; *Citizens' State Bank v. First Nat.*

Publisher's Note.

1. Power of bank to pledge assets to secure deposits, see notes in Ann. Cas. 1915C, 171; 45 L. R. A., N. S., 950. See, also, 3 R. C. L. 419.

3. Rights of parties to illegal contracts, see notes in 67 Am. Dec. 153; 3 Am. St. 742. See, also, 6 R. C. L. 814 et seq.

See Banks and Banking, 7 C. J., sec. 213, p. 586, n. 92; sec. 480, p. 725, n. 85, p. 727, n. 2 New; sec. 542, p. 748, n. 50.

Estoppel, 21 C. J., sec. 113, p. 1111, n. 36,

*Bank,* 98 Kan. 109, 157 Pac. 392, L. R. A. 1917A, 696; *Julius v. State ex rel. Walcott,* 113 Okl. 7, 237 Pac. 605; *Hirning v. Toohey,* 49 S. D. 496, 207 N. W. 462; Id., 50 S. D. 457, 210 N. W. 723.)

S. Ben Dunlap, for Respondent, cites no authorities on points decided.

T. BAILEY LEE, J.—On November 16, 1925, the Western Commercial Bank in Caldwell, while insolvent accepted a deposit from defendant, Canyon County Farmers' Mutual Fire Insurance Company, and delivered such company as security therefor $20,411.81 worth of its assets consisting of certain warrants. On December 23d following the bank closed and was placed in the hands of the Commissioner of the Department of Finance. Demand for the surrender of the warrants was made upon the Insurance Company, which demand having been refused, the Commissioner sued for their recovery, or, in lieu thereof, their face value together with accrued interest. The defendant Insurance Company demurred generally and upon the three special grounds that the court had no jurisdiction of the defendant's person or of the subject matter; that plaintiff had no legal capacity to sue, and that plaintiff was estopped to maintain this action "for the reason that it appears from the face of the complaint that he seeks as assignee of one of the parties to the contract referred to and pleaded in the complaint to be relieved from the performance of a contract fully executed by defendant on the ground that said contract is *ultra vires* and beyond the authority of his assignor."

[1] We are called upon to consider only the merits of the general demurrer and the plea of estoppel. Sec. 39 of chap. 133 of the Idaho 1925 Session Laws, provides:

"Giving Security for Deposit Prohibited. It shall be unlawful for any bank to pledge, mortgage or hypothecate to any depositor any of its real or personal property as security for any deposit and any pledge, mortgage or

hypothecation made in violation thereof shall be unenforceable; provided, however, that this provision shall not apply to any deposits of moneys of the United States and public funds deposited in accordance with the provisions of any depository act of this state, or the United States."

This enactment clearly declares a public policy prohibiting preferences in favor of one depositor over other depositors and general creditors of a bank. It is contended that a contract made in violation of this statute is merely illegal and not void, since its invalidity is not in terms declared; and, such being the case, the law will leave the parties where it finds them. As to the nature of a contract undertaken in defiance of a direct legislative inhibition, we have found nothing more succinct than the language employed in *Swanger v. Mayberry,* 59 Cal. 91, where on page 94 the Court said:

"The general principle is well established that a contract founded on an illegal consideration, or which is made for the purpose of furthering any matter or thing prohibited by statute, or to aid or assist any party therein, is void. This rule applies to every contract which is founded on a transaction *malum in se,* or which is prohibited by statute, on the ground of public policy."

This invalidity vitiates the contract between the immediate parties. 6 Cal. Juris., 150, sec. 106, citing copious authorities. Other authorities holding such contracts void are especially; Black on Interpretation of Laws, 2d ed., page 87; Endlich on Interpretation of Statutes, page 640, sec. 449; *Barton v. Port Jackson, etc.,* 17 Barb. (N. Y.) 397; *People v. Board of Supervisors,* 122 Ill. App. 40; *Swing v. Sligo Furnace Co.,* 133 Ill. App. 216; *Hirning v. Toohey,* 49 S. D. 496, 207 S. W. 462; *Julius v. Walcott,* 113 Okl. 7, 237 Pac. 605; *Pulitzer Pub. Co. v. McNichols,* 170 Mo. App. 709, 153 S. W. 562; *Pinney v. First Nat. Bank,* 68 Kan. 223, 1 Ann. Cas. 331, 75 Pac. 119; *Robertson v. Hayes,* 83 Ala. 290, 3 So. 674; *Terrett v. Bartlett,* 21 Vt. 183; *Siter v. Sheets,* 7 Ind. 132.

Defendant urges that the instant case presents the well-recognized exception that where the statutory prohibition is found in a statute, the purpose of which is the regulation of business, the courts will treat the contract as valid, unless it is manifestly the intention of the statute to make it void. This rule was announced in *Vermont Loan Company v. Hoffman*, 5 Ida. 383, 95 Am. St. 186, 49 Pac. 314, 37 L. R. A. 509, but in that case the doing of the particular business was not of itself prohibited. The statute imposed as a condition precedent the taking out of a license, and declared the failure so to do to be a misdemeanor; and the court upholding the contract directly declared that it would not have done so, had the business itself been in terms prohibited. The rule is clearly enunciated in Endlich on Interpretation of Statutes, page 651, where, after stating it, the writer says: "and it would seem clear that it cannot apply where there is an express prohibition of the act or contract, either for the protection of the revenue or for any other purpose."

[2-4] The distinction is most ably discussed in *Sunflower Lumber Co. v. Turner Supply Co.*, 158 Ala. 191, 132 Am. St. 20, 48 So. 510. It has been held that even in the absence of a statute prohibiting it, a bank cannot pledge its assets to secure a depositor, such act being *"ultra vires* and void." (*Commercial B. & T. Co. v. Citizens T. & G. Co.*, 153 Ky. 566, Ann. Cas. 1915C, 166, 156 S. W. 160, 45 L. R. A., N. S., 950; *Divide County v. Baird* (N. D.), 51 A. L. R. 296, 212 N. W. 236.) The reason underlying these two strong cases may be reduced to the proposition that a bank organized under a statute permitting it to do business on terms and conditions and subject to liabilities prescribed in the statute has no power to pledge its assets to secure a deposit where such power is not expressly awarded by law. It having been determined that the contract of pledge was void, it remains to discover what right, if any, the Commissioner had to maintain the suit. The defendant Insurance Company adroitly argues that the Commissioner stands

in the shoes of the bank, and, not having rescinded or offered to return defendant's deposit, is estopped to demand relief. In other words, the parties being in *pari delicto*, the law will not aid the one as against the other. The fallacy of the argument is at once evident. While it is true, as was said in *State v. City of Sapulpa*, 58 Okl. 550, 160 Pac. 489, that "where the bank Commissioner assumes possession of a state bank he does not take the assets thereof for value and without notice, but subject to all claims and defences that might have been interposed against the bank, had it continued under its corporate management," this cannot serve to defeat equities superior to those of parties asserting the particular defense. Under the laws of this state, the Commissioner stands as a trustee to protect the rights of all claimants, particularly those of depositors and general creditors. Under the law, the right of the defendant can be only that of a general depositor as such; it can acquire no greater right than that inuring to any other general depositor as such. Such equity as it may claim under its pledge agreement rests upon a nullity, an outlawed contract, and would work an injury to every other depositor in its own class. Furthermore, "The doctrine of estoppel has no application to a contract void because it violates an express mandate of the law or the dictates of public policy." (6 Cal. Juris., 150, sec. 106.)

There is no place here for the doctrine that the law will leave the parties where it finds them. The basis of such a rule is that the courts will not aid or reward a wrongdoer. The depositors whom the Commissioner represents have done no wrong. As was said in *Divide County v. Baird, supra,* "Shall they be punished for the misdeeds of the guilty?" So informing is this cited case, and so similar to the case at bar, that we feel constrained to quote from it at length. There, a bank had unlawfully pledged its assets to secure county deposits; and the court reviewing this very contention, said:

"It is said that this court must leave the parties to the illegal contract where it finds them, and that the receiver will not be permitted to recover the securities. To be left where and as found is precisely all the county can desire—with the illegally obtained collateral in its possession. In some way, which does not clearly appear, the receiver, although he represents the depositors and it is his duty to protect their interests, is supposed to be estopped from recovering the possession unless he first pays the money, or 'deposit,' which the bank received at the time when it and the county entered into the unlawful arrangement.

"It appears to me that this position fails to take note of the status of the receiver of an insolvent bank. He is an arm or officer of the court appointing him, yet, at the same time, he represents the creditors and stockholders of the corporation in more than a merely theoretical or academic sense. Viewed from this standpoint, his status is such that it is his duty to vindicate and protect the rights of the depositors. Under the law, they have the legal right to demand that the assets of the bank shall not be pledged to secure favored depositors . . . . When the wrong was done, they were powerless to speak or prevent it; now an officer of the court is charged with the duty of protecting their interests. Shall we say to him that there is no remedy whereby the innocent may be protected from the consequences of the unlawful conduct of others? . . . .

"And yet it is said that the court, after finding the injury, can only slap the defunct bank and the delinquent county on the wrist, and say to the depositors: 'We must leave you where we find you; we can do nothing, because the transaction was illegal, and you have not returned something which, not you, but the bank got from the plaintiff.' "

To the same effect spoke the court in *Commercial B. & T. Co. v. Citizens T. & G. Co., supra,* observing: "It is well known that good statements as to assets induce people to deposit their money in banks making such statements.. It would be a crowning act of injustice to hold that deposits

thus induced are nevertheless cut off from sharing these assets, until some unknown favored few who have been secretly secured, are satisfied.''

[5] Were defendant's contention sustained, the purpose of the statute would be defeated. Once the parties were successful in executing their unlawful scheme, the victims of the legal fraud, although they were also the beneficiaries of the statute which had been flouted, would be helpless. As to them the statute would have been wholly abrogated, and the legislature made a laughing stock. It must therefore follow that the defendant cannot retain the assets which the bank attempted to hypothecate, and thereby sorely defraud the very persons for whose protection the statute was enacted. (*Citizens State Bank, etc., v. First Nat. Bank,* 98 Kan. 109, 157 Pac. 392, L. R. A. 1917A, 696, *Julius v. Walcott, Hirning v. Toohey, Divide County v. Baird, Commercial B. & T. Co. v. Citizens T. & G. Co., supra.*)

The complaint stated a cause of action and the demurrer should have been overruled. Judgment reversed and the case remanded. Costs to appellant.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.