115 P.3d 721

**Monte T. REESE, Claimant–Appellant,**

v.

**V–1 OIL COMPANY, dba V–1 Propane, Employer, and Old Republic Insurance Company, surety, Defendants–Respondents.**

No. 31014.

Supreme Court of Idaho,
Boise, May 2005 Term.

June 15, 2005.

---

Richard S. Owen, Nampa, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for respondents. Glenna M. Christensen argued.

EISMANN, Justice.

The employer wrongfully denied the claimant the only treatment recommended by the claimant's treating physician to alleviate the claimant's continuing pain following his back surgery. The claimant ultimately sought care from another physician, who performed a second surgery that alleviated most of the pain. The Industrial Commission denied medical benefits for the second surgery and total temporary disability benefits during the period of recovery because the claimant had not obtained permission from the employer or Commission before changing physicians. The claimant appealed, and we reverse the Commission.

## I. FACTS AND PROCEDURAL HISTORY

On Friday, December 1, 2000, Monte Reese injured his lower back while working for V–1 Oil Company (V–1), which was doing business as V–1 Propane in Donnelly, Idaho. Reese rested over the weekend, and then on Monday, December 4, 2000, he sought medical treatment at the emergency room of the hospital in McCall. He was initially examined by a family practitioner, who diagnosed Reese as having an acute lumbosacral back strain with a known history of lumbar degenerative joint disease. Conservative treatment did not alleviate Reese's pain. A subsequent MRI revealed disc bulges at L3–4 and L4–5, and the family practitioner referred Reese to a neurological surgeon.

On January 9, 2001, the surgeon performed a partial laminectomy of L3 and L5, a complete laminectomy of L4, and a fusion at L4–5. The fusion included the insertion of Brantigan cages, pedicle screws, and metal rods in order to stabilize Reese's spine during the time it would take for the bone grafts to fuse. The surgery and the ensuing physical therapy and medications did not alleviate Reese's back pain. Both the surgeon and the family practitioner noted that Reese's depression from dealing with back pain, his unemployment, and his anxiety over issues related to worker's compensation complicated his recovery.

On November 6, 2001, Reese's family practitioner referred him to a pain clinic, but the treatment regimen did not alleviate the pain. While being treated at the pain clinic, his attending physician, Dr. DuBose, noted that Reese might be overusing his narcotic pain medications. Dr. DuBose also referred Reese to an orthopedic surgeon for consultation regarding further surgical intervention, and by letter dated February 26, 2002, the surgeon stated he did not feel that further surgical intervention at the operative site was warranted. The surgeon also stated Reese had developed postoperative scarring and that if it did not resolve on its own a dorsal column stimulator or a selective nerve root block may be beneficial.

Reese then began the four-week LifeFit program, which provided physical therapy,

occupational therapy, and counseling. His attending physician, Dr. Friedman, required him to taper off the use of narcotics. Reese worked hard during the program and appeared to meet the program goals. On the last day of the program, however, Dr. Friedman discharged Reese for noncompliance because he had resumed taking narcotic medications without permission. In a letter dated June 18, 2002, Dr. Friedman stated that Reese had reached maximum medical improvement and was able to return to light-to-medium-duty work on June 24, 2002.

Reese returned to Dr. DuBose, seeking narcotic medications for his pain. Dr. DuBose refused to prescribe more narcotics because they were not particularly helpful for the type of pain Reese was experiencing. Dr. DuBose believed, however, that a spinal cord stimulator would be the best modality available to treat Reese's pain. By letter dated July 1, 2002, Dr. DuBose asked V–1's worker's compensation insurance carrier, Old Republic Insurance Company (Surety), to authorize a spinal cord stimulator trial for Reese. The purpose of the trial was to see whether the stimulation provided pain relief. If it did, then a spinal cord stimulator could be implanted to provide long-term pain relief. On July 24, 2002, the Surety inquired of Dr. Friedman whether he concurred with Dr. DuBose's recommendation that a spinal cord stimulator be tried. By letter dated July 28, 2002, Dr. Friedman responded that he did not believe a neurostimulator should be tried and that Reese needed to return to work and manage his pain without external supports. The Surety therefore denied authorization for the spinal cord stimulator trial.

On August 26, 2002, Reese visited a hospital emergency room in Boise seeking relief from his back pain. On September 11, 2002, he sought treatment at the Veterans Administration, where he was treated with pain medications through March 13, 2003. The treatment ended when the physician informed Reese that he should return to Old Republic for further treatment.

Reese moved to Baker City, Oregon, to live with friends. While there, he sought care from another physician, who eventually referred him to Dr. Jorgenson in Boise. After examining Reese, Dr. Jorgenson recommended extending the fusion to include the L3–4 level. He performed the fusion on April 1, 2003, and it was successful in improving Reese's condition and lessening his pain. Although he still had some pain, his pain was no longer continuous and he could sleep nights.

Reese sought medical benefits for the second surgery and total temporary disability (TTD) benefits during the period of recovery from that surgery. A referee presided over the evidentiary hearing and recommended that Reese be denied both medical benefits for the second surgery and the resulting TTD benefits because he had failed to acquire approval to change his physician before obtaining medical care from Dr. Jorgensen. A divided Commission adopted the referee's proposed findings of fact and conclusion of law and ordered that Reese was not entitled to medical care for the second surgery or to TTD benefits thereafter. Reese requested reconsideration, but a divided Commission adhered to its original decision. Reese then appealed.

## II. ISSUES ON APPEAL

A. Did the Industrial Commission err in denying Reese medical benefits for the surgery performed by Dr. Jorgensen?

B. Did the Industrial Commission err in denying Reese total temporary disability benefits during his period of recovery from the surgery performed by Dr. Jorgensen?

## III. ANALYSIS

### A. Did the Industrial Commission Err in Denying Reese Medical Benefits for the Surgery Performed by Dr. Jorgensen?

■ The Industrial Commission held that Reese was not entitled to benefits related to the second surgery because he had failed to comply with Idaho Code § 72–432. The relevant portions of the statute provide as follows:

(1) The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

. . . .

(4)(a) The employee upon reasonable grounds, may petition the commission for a change of physician to be provided by the employer; however, the employee must give written notice to the employer or surety of the employee's request for a change of physicians to afford the employer the opportunity to fulfill its obligations under this section. If proper notice is not given, the employer shall not be obligated to pay for the services obtained.

Relying upon subsection (4)(a) of the statute, the Industrial Commission stated, "The Claimant could have (1) asked a treating doctor for a referral, (2) asked Defendants for a change, or (3) sought a change of physician under Rule 20, J.R.P. Instead, he went out on his own and failed to disclose the fact to Defendants until after the surgery was performed." It concluded, "Surety refused the one treatment Dr. DuBose recommended. Surety obtains a windfall because Claimant acted in desperation."

In reaching its decision, the Commission construed § 72–432(1) very narrowly. The first sentence of the subsection states in broad terms the medical care that an employer is required to provide to an injured employee. The second sentence states, "If the employer fails to provide the same, the injured employee may do so at the expense of the employer." The Commission construed the words "the same" to refer to the specific treatment that the employer failed to provide. It then construed the injured employee's right to "do so at the expense of the employer" as the right to obtain only that specific treatment at the employer's expense. Thus, when V–1 failed to provide the spinal cord stimulator trial reasonably required by Dr. DuBose, Reese was only entitled to obtain a spinal cord stimulator trial at V–1's expense. V–1 could not be required to pay for any other type of treatment, even if it was "reasonably required ... or needed."

▉ The worker's compensation law is to be liberally construed in favor of the claimant in order to effect the object of the law and to promote justice. *Haldiman v. American Fine Foods*, 117 Idaho 955, 793 P.2d 187 (1990). The humane purposes that this law seeks to serve leave no room for a narrow technical construction. *Id.*

V–1 was required to provide Reese with "such reasonable medical, surgical or other ... treatment ... as may be reasonably required by [his] physician or needed immediately after [his] injury ... and for a reasonable time thereafter." I.C. § 72–432(1). V–1 provided Reese with back surgery and thereafter with medications and therapy in an attempt to eliminate or reduce Reese's continuing back pain. When the medications and therapy proved unsuccessful to reduce the pain to a manageable level, Reese's treating physician recommended the spinal cord stimulator trial as the best modality available. It was also, at that point, the treating physician's only recommended treatment. As the Commission found, neither the family practitioner who initially treated Reese nor the neurological surgeon who performed the first back surgery would treat Reese further. Likewise, Dr. DuBose would not provide any further treatment other than the spinal cord stimulator.

V–1 challenges that finding, arguing that there is no evidence that the family practitioner, the neurological surgeon, or Dr. DuBose refused to see Reese again. Reese was not seeking companionship from these physicians. He did not want simply to see them. He wanted treatment for his continuing back pain.

On July 1, 2002, Reese came to Dr. DuBose seeking more narcotic pain medications. Dr. DuBose met with Reese for about thirty minutes, informing him that narcotics were not particularly effective for his type of pain and that Dr. DuBose would not prescribe any

more narcotic pain medications for him. Reese asked if there were other options for dealing with his pain, and Dr. DuBose responded that the spinal cord stimulator was the best modality available, and he recommended that treatment. On July 30, 2002, Reese returned to his family practitioner seeking pain medications. The family practitioner gave him a one-time prescription, told him it would not be refilled, and referred him to Dr. DuBose. On September 4, 2002, Reese returned to his neurological surgeon seeking narcotic medications. The surgeon refused to prescribe the medications and referred him to Dr. DuBose. Thus, the family practitioner and the neurological surgeon would not provide Reese with any additional treatment for his pain, and the only treatment Dr. DuBose would provide was the spinal cord stimulator. With the Surety's refusal to authorize the spinal cord stimulator trial, these physicians had no other treatment to offer Reese for his continuing back pain. The Commission's finding that the physicians refused to treat Reese further is supported by substantial and competent evidence.

■ Idaho Code § 72–432(1) requires an employer to provide an injured employee "such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after an injury or manifestation of an occupational disease, and for a reasonable time thereafter." There is no difference between failing to provide medical treatment that is "reasonably required by the employee's physician or needed immediately after an injury" and failing to provide such treatment "for a reasonable time thereafter." As we stated in *Burch v. Potlatch Forests, Inc.*, 82 Idaho 323, 327, 353 P.2d 1076, 1078 (1960), the word "treatment" "is a broad term and is employed to indicate all steps taken in order to effect a cure of an injury or disease."

Once an employer wrongfully fails to provide medical treatment, "the injured employee may do so at the expense of the employer." Reese was entitled to obtain, at V–1's expense, any medical care "as may be rea-

sonably required by the employee's physician or needed ... for a reasonable time" after the injury. The Commission found that the need for Reese's second surgery was caused by his work-related injury. It noted that Dr. Jorgensen had testified that in his opinion the L3–4 level in Reese's spine was either injured in the original accident or destabilized during the first surgery and that the fusion at L4–5 had placed additional mechanical stress on L3–4.

V–1 argues, "[T]the Idaho Code provides a clear option for a workers compensation claimant [claimant] dissatisfied with his or her physician or the physician's recommendations, and if Mr. Reese had followed that procedure, he would not have been faced with the 'harsh results'" Once it refused to authorize the treatment recommended by Dr. DuBose, V–1 was, in effect, no longer providing a physician for Reese. As mentioned above, Reese's reason for seeing these physicians was to obtain treatment for his back pain. There is no practical difference between not authorizing the treatment recommended by a physician and not providing the physician. Once V–1 had ceased providing a physician, Idaho Code § 72–432(1) authorized Reese to obtain medical care at V–1's expense. He was not required to seek permission to change physicians because V–1 was no longer providing a physician who could treat him.

Indeed, there was no reason to require Reese to seek permission to change his physician. Reese was not dissatisfied with the medical care he was receiving from Dr. DuBose. V–1 had simply refused to provide what, at that time, was the only treatment recommended by Dr. DuBose. Because Dr. DuBose sought authorization from the Surety before proceeding with the spinal cord stimulator trial, and did not proceed with it after the Surety had refused that authorization, Dr. DuBose was apparently unwilling to provide that treatment without the Surety's prior approval. It is apparent that Reese lacked the financial resources to pay for that treatment himself. Under the Commission's reading of § 72–432(1), his only option would have been to seek a physician willing to provide a spinal cord stimulator trial without

the Surety's prior authorization, which is unlikely. A change in physicians at that point would not be based upon any dissatisfaction with the care being provided or desire to try some other form of treatment. It would simply be to find a physician willing to extend Reese credit.

The Commission erred in holding that Reese was required to seek permission for a change of physician once V–1 had wrongfully ceased providing medical care as required by Idaho Code § 72–432(1). The only reason for the denial of the medical benefits related to Dr. Jorgensen's surgery was the alleged failure to seek permission. The Commission found that such surgery was reasonably required by Reese's physician and that it was needed as a consequence of his work-related injury. We therefore reverse the Commission and order that Reese be awarded medical benefits related to Dr. Jorgensen's surgery.

**B. Did the Industrial Commission Err in Denying Reese Total Temporary Disability Benefits During His Period of Recovery from the Surgery Performed by Dr. Jorgensen?**

 In addition to medical benefits related to Dr. Jorgensen's surgery, Reese also sought TTD benefits for the period of his recovery from that surgery. The Commission denied the TTD benefits on the ground that Reese had failed to obtain permission before seeking medical care from Dr. Jorgensen. Because we are reversing the Commission's order with respect to the medical benefits, we also reverse its order with respect to the income benefits for TTD. We note, however, that the Commission has misconstrued Idaho Code §§ 72–408 and 72–432(4)(a).

Had Reese failed to comply with Idaho Code § 72–432(4)(a) when seeking medical care from Dr. Jorgensen, V–1 would not have been obligated to pay for such care. The statute states, "If proper notice is not given, the employer shall not be obligated to pay for the services obtained." The statute does not provide, however, that such services shall be deemed as being unrelated to the work-related injury. Idaho Code § 72–408 entitles an injured employee to income benefits "for total and partial disability during the period of recovery." The entitlement to income benefits is not dependent upon the employee complying with Idaho Code § 72–432(4)(a).

## IV. CONCLUSION

We reverse the order of the Industrial Commission. We remand this case with instructions to award Reese "such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be reasonably required by" Dr. Jorgensen and income benefits for total or partial disability during the period of recovery from Dr. Jorgensen's surgery. We award the appellant costs on appeal.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES concur.