# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34539

PATSY WERNECKE, )
)
    Claimant-Appellant, )
)
v. )
)
ST. MARIES JOINT SCHOOL DISTRICT )    Boise, January 2009 Term
#401, Employer, and STATE INSURANCE )
FUND, Surety, )    2009 Opinion No. 56
)
    Defendants, )    Filed: April 14, 2009
)
and )    Stephen W. Kenyon, Clerk
)
STATE OF IDAHO INDUSTRIAL SPECIAL )
INDEMNITY FUND, )
)
    Defendant-Respondent. )
)

Appeal from the Idaho Industrial Commission.

The decision of the Industrial Commission is <u>reversed</u> and the case is <u>remanded</u>.

Landeck, Westberg, Judge & Graham, P.A., Moscow, for appellant. Charles L. Graham argued.

Mallea Law Offices, Boise, for respondent. Kenneth L. Mallea argued.

_____

J. JONES, Justice

    This is an appeal from an order of the Idaho Industrial Commission holding that a 1994 settlement agreement between Patsy Wernecke and the Industrial Special Indemnity Fund (ISIF) barred all future claims by Wernecke against ISIF. We reverse the order and remand for further proceedings.

## I.

    In 1990, Patsy Wernecke suffered an industrial injury while employed as a nurse's aide. She filed a worker's compensation complaint against her employer, the State Insurance Fund,

and ISIF. Disputes arose between the parties regarding pre-existing impairment, causation, and total and permanent disability. Once she reached medical stability, three physicians evaluated Wernecke and all concluded that despite her injury she was capable of light work, subject to certain physical restrictions. Wernecke settled with her employer and the State Insurance Fund. She later entered into a lump sum settlement agreement (the Agreement) with ISIF, compromising her claim of total and permanent disability for the sum of $6,500.00.

The Agreement states: "Claimant [Wernecke] contends, and the Fund [ISIF] denies, that Claimant is totally and permanently disabled and unable to work and that the Fund is liable for a portion of Claimant's disability due to [pre-existing] conditions." The Agreement continues:

> It is the contention of the Fund that there are disputes concerning: (1) whether Claimant suffered injuries as a result of an accident arising out of and in the course of employment on June 28, 1990; (2) whether Claimant is totally and permanently disabled; (3) whether Claimant has a pre-existing permanent physical impairment within the meaning of Section 72-332 Idaho Code; (4) if Claimant has a pre-existing physical impairment, whether said pre-existing impairment was manifest and constituted a hindrance or obstacle to Claimant obtaining employment; (5) whether in the event Claimant is totally and permanently disabled, Claimant has pre-existing impairments within the meaning of Section 72-332, Idaho Code, which contributed to said disability . . . .

The Agreement goes on to bar Wernecke from recovering any additional compensation from ISIF for any claim of any nature. Wernecke, who was represented by an attorney, signed the Agreement, which the Commission approved in 1994.[1]

Wernecke returned to work under the restrictions recommended by the examining physicians. Unfortunately, she sustained another injury in 2002 while working as a custodian. She filed a complaint against ISIF, her employer, and the State Insurance Fund, asserting that her pre-existing ailments, combined with a new shoulder injury, rendered her totally and permanently disabled. She settled her claims against the State Insurance Fund and her employer. ISIF, on the other hand, argued that the Agreement barred any further recovery from ISIF and filed a petition for a declaratory ruling pursuant to Rule 15 of the Commission's Judicial Rules of

---

[1] Wernecke was represented by James Westberg at that time, and is currently represented by another attorney from the same firm, Charles Graham. Although ISIF insists that this is a vital fact, the identity and professional affiliations of Wernecke's attorney are of little import.

Practice and Procedure.[2]  Wernecke argued that the Agreement violated the Worker's Compensation Act (the Act), and was therefore void.  The Commission granted ISIF's petition, finding the Agreement valid.  It further held that Wernecke's present claim against ISIF was barred by the doctrines of *res judicata*, collateral estoppel, and quasi-estoppel, and that she had waived her right to pursue another claim against ISIF.  Wernecke appeals from the Commission's order.

## II.

### A.  Standard of Review

We do not disturb the Commission's factual findings that are supported by substantial and competent evidence, but we exercise free review over the Commission's legal conclusions. *Arel v. T & L Enters., Inc.,* 146 Idaho 29, 31, 189 P.3d 1149, 1151 (2008).

This case requires us to consider whether the Agreement is violative of the Act.  Whether a contract violates a statute is a question of law for the Court to determine from all the facts and circumstances of each case.  *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002).  A contract made for the purpose of furthering any matter prohibited by statute is illegal, unenforceable, and void.  *Kunz v. Lobo Lodge, Inc.*, 133 Idaho 608, 611, 990 P.2d 1219, 1222 (Ct. App. 1999) (citing *Porter v. Canyon County Farmers' Mut. Fire Ins. Co.*, 45 Idaho 522, 525, 263 P. 632, 633 (1928)).  When a court is faced with an illegal contract, it denies enforcement of the contract.[3]  *Trees*, 138 Idaho at 9, 56 P.3d at 771.

In order to determine if the Agreement violates the Act, we must engage in statutory interpretation, which is an issue of law over which we exercise free review.  *In re Daniel W.*, 145 Idaho 677, 679, 183 P.3d 765, 767 (2008).  Statutory interpretation begins with the literal language of the statute.  *Paolini v. Albertson's, Inc.*, 143 Idaho 547, 549, 149 P.3d 822, 824 (2006).  The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings.  *Id.*  When the statutory language is unambiguous, the plain meaning of the statute must be given effect, and the court need not consider rules of statutory

---

[2] That rule allows a person with an interest in a statute, rule, regulation or order to seek a declaratory ruling from the Commission concerning the construction, validity, or applicability of any worker's compensation statute, rule, regulation or order.

[3] ISIF asserts that parties should not be allowed to argue that their prior agreements are unlawful because doing so is unfair.  This argument lacks merit because the issue of contract illegality cannot be waived, but may be raised at any stage of the litigation.  *Trees*, 138 Idaho at 6, 56 P.3d at 768; *Whitney v. Cont'l Life & Accident Co.*, 89 Idaho 96, 105, 403 P.2d 573, 579 (1965) (noting that an illegal contract cannot be "treated as valid by invoking estoppel").

3

construction. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). It should be noted that the court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. *AmeriTel Inns, Inc. v. Pocatello-Chubbuck Auditorium Dist.*, 146 Idaho 202, 204, 192 P.3d 1026, 1028 (2008).

When interpreting the Act, we must liberally construe its provisions in favor of the employee in order to serve the humane purpose for which it was promulgated. *Reese v. V-1 Oil Co.*, 141 Idaho 630, 633, 115 P.3d 721, 724 (2005); *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 337, 870 P.2d 1292, 1296 (1994). The Act is designed to provide sure and certain relief for injured workers and their families and dependents. *Davaz*, 125 Idaho at 337, 870 P.2d at 1296; I.C. § 72-201. The primary objective of an award of permanent disability benefits is to compensate the claimant for his or her loss of earning capacity. *Davaz*, 125 Idaho at 337, 870 P.2d at 1296. The purposes served by the Act leave no room for narrow technical constructions. *Reese*, 141 Idaho at 633, 115 P.3d at 724.

**B. The Agreement Is Violative of the Act**

Wernecke argues that Idaho Code section 72-318(2) prohibits any agreement wherein an employee waives his or her rights to compensation for future injuries. ISIF contends that section 72-318 applies only to agreements between employees and employers; that it does not prohibit employees from waiving claims arising from future injuries; and that, with regard to agreements between an employee and ISIF, an employee must be allowed to waive claims arising from future injuries since ISIF only pays compensation once for any covered employee.

**1. Idaho Code Section 72-318(2) Applies to All Agreements Purporting To Waive Rights to Compensation Under the Act**

Wernecke argues that the Agreement is void under Idaho Code section 72-318(2) because it relieves ISIF from its obligation to her resulting from any *future* injury or subsequent disability. ISIF asserts that section 72-318 only applies to agreements between employers and employees, and furthermore that it does not prohibit settling future claims. That section reads:

> (1) No agreement by an employee to pay any portion of the premiums paid by his employer for workmen's compensation, or to contribute to the cost or other security maintained for or carried for the purpose of securing the payment of workmen's compensation, or to contribute to a benefit fund or department maintained by the employer, or any contract, rule, regulation or device whatever designed to relieve the employer in whole or in part from any liability created by

4

this law, shall be valid. Any employer who makes a deduction for such purpose from the remuneration of any employee entitled to the benefits of this act shall be guilty of a misdemeanor.

(2) *No agreement by an employee to waive his rights to compensation under this act shall be valid.*

I.C. § 72-318 (emphasis added).

ISIF maintains that the *only* type of agreement prohibited by section 72-318 is one that relieves an *employer* of its obligations under the Act. Wernecke argues that ISIF's proffered interpretation is not supported by the case law and, further, that such an interpretation would render subsection (2) meaningless. According to Wernecke, subsection (1) addresses particular contracts between employers and employees, while subsection (2) addresses *all agreements* by an employee to waive his or her rights to compensation.

The cases on which ISIF relies to support its argument do not consider the issue of whether section 72-318(2) only applies to agreements between an employee and an employer. In *Osick v. Public Employee Retirement System of Idaho*, 122 Idaho 457, 835 P.2d 1268 (1992), we held that an agreement offsetting the amount an employee was receiving under worker's compensation against the employee's public employee retirement benefits did not violate section 72-318. *Id.* at 461, 835 P.2d at 1272. The agreement did not relieve the employer from its liability under the Act or otherwise reduce the employee's worker's compensation benefits. *Id.* Instead, only PERSI (the Public Employee Retirement system) was relieved of part of its liability to pay disability retirement benefits and the relevant Idaho law did not prohibit a reduction of disability retirement benefits. *Id.* Therefore, the claimant received his full entitlement of worker's compensation, and no violation of section 72-318 occurred. *Id.* Notably absent from the case is any discussion of whether section 72-318(2) applies to employee agreements with parties other than the employer. ISIF, however, extracts the following quote from *Osick*: "I.C. § 72-318 does not, however, prohibit a reduction of disability retirement benefits. It only prohibits an agreement by an employee to relieve an employer of an obligation that the employer has because of the [worker's] compensation laws." *Osick*, 122 Idaho at 461, 835 P.2d at 1272. Based on this quote, ISIF argues that the statute "only" prohibits certain agreements between employees and employers. When reading *Osick* in its entirety, however, it is apparent that ISIF's position is incorrect. The rationale behind the Court's holding was that because the obligation and amount of worker's compensation benefits were not affected by offsetting the amount

5

PERSI was obligated to pay for disability retirement benefits, no violation of Idaho Code section 72-318 occurred. *Id.*

The second case referenced by ISIF likewise does not address whether section 72-318(2) applies only to agreements between employers and employees. *See Burdick v. Thornton*, 109 Idaho 869, 712 P.2d 570 (1985). The Court merely noted that "[n]o [agreement between an alleged employee and employer] can constitute a waiver by an employee of any rights he might otherwise have under the workmen's compensation law." *Id.* at 873, 712 P.2d at 574 (citing I.C. § 72-318). The Court did not discuss the types of agreements covered by section 72-318(2). Since no case considers whether the prohibitions of section 72-318(2) apply to all agreements entered into by employees, the issue is one of first impression before this Court.

Section 72-318 contains two subsections: the first lays out a detailed list of prohibited acts and agreements, while the second contains only a simple statement indicating that "[n]o agreement by an employee to waive his rights to compensation under this act shall be valid." In keeping with the purposes of the Act, section 72-318(2) must be interpreted to prohibit *all* agreements that waive an employee's rights to compensation under the Act. To hold otherwise would mean that subsection (2) is mere surplusage and would require a tortured interpretation of the statutory language.

**2. Idaho Code Section 72-332 Provides a Narrowly-Defined Exception to the General Rule that a Claimant Cannot Waive Rights to Compensation for Future Injuries**

While Wernecke concedes, based on this Court's holding in *Emery v. J.R. Simplot Co.*, 141 Idaho 407, 111 P.3d 92 (2005), that section 72-318 permits a claimant to compromise a claim arising out of a *past* injury, she insists that it does not allow a claimant to waive claims arising from *future* injuries. Therefore, Wernecke argues that the Agreement violates section 72-318(2) and, accordingly, is void. ISIF counters that because *Emery* did not expressly state that an agreement similar to the one in this case is violative of section 72-318(2), the Agreement is valid.

While parties may compromise claims arising from past injuries, they generally may not compromise claims arising from future injuries. *Emery*, 141 Idaho at 410, 111 P.3d at 95. We held in *Emery* that a stipulation dismissing a claim with prejudice, even without payment of compensation, did not violate Idaho Code section 72-318(2). *Id.* In so holding we emphasized

that the stipulation merely dismissed Emery's claim with respect to the injury he suffered on a specific occasion. *Id.* Notably, this Court found it significant that "[t]he stipulation did not relieve [the employer] of liability for any injury [Emery] might suffer in the future while employed by [the employer]. Emery and [the employer] agreed to resolve the specific claim at issue in this case." *Id.* Despite ISIF's argument that *Emery* did not explicitly disallow stipulations dismissing claims for benefits arising out of future injuries, the case indicates such agreements are violative of section 72-318(2). The language of the statute specifies that "*[n]o agreement by an employee to waive his rights to compensation under this act shall be valid.*" I.C. § 72-318(2) (emphasis added). Therefore, agreements attempting to waive compensation rights stemming from future, unknown injuries are generally invalid.

Despite the general rule, it is permissible for settlements involving ISIF to waive rights arising from future injuries due to ISIF's unique role under the Act.[4] ISIF is liable to provide compensation to a worker *only when* the claimant shows that he or she is totally and permanently disabled because of the combination of a permanent pre-existing physical impairment and a new industrial injury. *See* I.C. § 72-332; *Garcia v. J.R. Simplot, Co.*, 115 Idaho 966, 968, 772 P.2d 173, 175 (1989) (holding that the four critical elements of a *prima facie* case against ISIF include: (1) a pre-existing impairment; (2) that the impairment was "manifest"; (3) that the alleged impairment was a "subjective hindrance"; and (4) that the alleged impairment combines in causing total disability). Therefore, according to ISIF, it cannot be liable for multiple successive suits by the same claimant because an injured worker may only be classified as totally and permanently disabled once.

The section describing ISIF's role in the worker's compensation system reads:

(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled

---

[4] Sections 72-318 and 72-332 were enacted at the same time and, therefore, must be construed together. Section 72-332, when properly invoked, constitutes a narrowly-defined exception to the prohibition in section 72-318(2). *See,* 1971 Idaho Sess. Laws ch. 124.

permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

I.C. § 72-332. Based on this statute, ISIF argues that a claimant may waive his or her claim to future benefits from ISIF, regardless of the possibility of future injuries, because ISIF only pays once per employee. When the Commission finds that the requirements of section 72-332 have been satisfied, this position is correct.[5]

This case, however, involves a lump sum settlement agreement with no finding by the Commission to invoke ISIF's liability under section 72-332. The validity of a waiver of future claims under such circumstances has not been considered by this Court. Therefore, ISIF's assertion must be considered in the context of the purposes behind the Act and the purpose for the creation of ISIF.[6]

### 3. An Agreement that Attempts to Compromise Claims Arising from Future Injuries Is Void Unless the Commission Makes the Findings Necessitated by Idaho Code Section 72-332

Wernecke contends that an agreement between an injured claimant and ISIF, waiving the claimant's rights to compensation for future injuries, is violative of the Act when ISIF denies the claimant is totally and permanently disabled, the Commission makes no finding of total and permanent disability, and no evidence exists that would support such a finding. Such agreements, according to Wernecke, defeat the Legislature's purpose in creating ISIF and subvert the Act's policy of providing "sure and certain relief" to employees. *See* I.C. § 72-201. ISIF asserts that its responsibility to compensate a claimant under section 72-332 is contingent

---

[5] In his authoritative work, Mike Wetherell notes in a discussion about ISIF:

> Lump sum settlements are, of course, possible, but the claimant's counsel should recognize that a settlement on a lump sum basis with [ISIF] involves an admission on the part of the Claimant that he is totally and permanently disabled. This means that [ISIF] can place language in its lump sum settlement agreements foreclosing any ability of the claimant at any future date, based on any future accident or aggravation, from seeking any further benefits from [ISIF]. Any lump sum agreement entered into with [ISIF] will contain language forever barring the claimant from any future claims against [ISIF].

MIKE WETHERELL, THE WORKERS' COMPENSATION LAWS OF IDAHO 339 (2001).

[6] ISIF argues that its position *must* be correct because over the past twenty-eight years during which computerized records have been kept, ISIF has entered into over 1,045 compensation agreements. To now hold its actions void would result in uncertainty regarding all those settlements, according to ISIF. This concern, however, is unwarranted, because our holding is limited to the unique facts in this case. Therefore, the outcome does not necessarily affect other agreements.

upon the claimant providing proof that he or she is totally and permanently disabled and otherwise establishing a prima facie case against ISIF. However, ISIF argues that this does not prevent parties from entering into lump sum settlement agreements as the parties did in this case.

The purpose of establishing ISIF was to relieve an employer of the burden of paying for total permanent disability compensation to an employee rendered totally and permanently disabled because of a pre-existing handicap coupled with a subsequent industrial injury. *Cox v. Intermountain Lumber Co.*, 92 Idaho 197, 200, 439 P.2d 931, 934 (1968). The goal was to encourage employers to hire handicapped people by reducing the employer's obligation to pay for industrial accidents in the amount it would pay to an employee who had not been previously handicapped. *Id.* The statute specifies that "the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account." I.C. § 72-332(1).

Wernecke argues that the word "shall" means that ISIF must pay the remainder of the income benefits pursuant to the statute. However, ISIF argues, and we agree, that it has no obligation until its liability under section 72-332 is established. That requires the finding of four critical elements: (1) a pre-existing impairment; (2) that the impairment was "manifest"; (3) that the alleged impairment was a "subjective hindrance"; and (4) that the alleged impairment combines in causing total disability. *Garcia v. J.R. Simplot, Co.*, 115 Idaho at 968, 772 P.2d at 175. Whether or not ISIF's liability is established is the primary concern in determining whether the Agreement is valid.

Reading the Act with its humane purposes in mind, we conclude that, until ISIF's liability is established under section 72-332, an agreement waiving an employee's rights to claims against ISIF is violative of section 72-318(2). To hold otherwise would result in the payment of questionable claims. Claimants and ISIF do not have absolute freedom to contract because the duties of the parties arise under the Act. As one worker's compensation expert states in his treatise:

> it must be stressed that the objective of the legislation is not to see how much money can be transferred to workers as a class; it is to ensure that those with truly compensable claims get full compensation. If there is doubt about the compensability of the claim, the solution is not to send the claimant away half-compensated, but to let the Compensation Board decide the issue. That is the Board's job.

9

8 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 132.04[2] (2008).[7]

Section 72-318(2) sets out the State's policy that agreements purporting to waive an employee's rights to compensation under the Act are void. Section 72-332 provides a narrow exception for cases that meet the requirements therein specified. ISIF's liability may only be invoked when the conditions specified in the statute, as defined in *Garcia*, are present. That requires findings by the Commission.[8] Unless the Commission finds that the requisite elements exist, it may not approve a lump sum settlement agreement involving ISIF. Such findings are for the benefit of both the claimant – to protect him or her from himself or herself – and of ISIF – to keep it from making unwarranted payments when there are no findings establishing ISIF's liability.[9] In this regard, the Commission plays a gatekeeper role and must scrupulously perform that function. The requisite findings may be made by the Commission upon a hearing on the merits or upon a stipulation of the parties considered and approved by the Commission.

In this case, the Commission erred by approving an agreement that clearly failed to contain the requisite elements to invoke ISIF's liability under section 72-332. In the text of the Agreement, ISIF specifically denied that Wernecke suffered an accident on January 28, 1990,

---

[7] Indeed, such considerations were cited by the dissenting opinion in the Commission's Order in this case. Commissioner Maynard stated:

> [I]t is axiomatic that ISIF's lump sum agreements should not be entered into as a means to unreasonably limit its liability. ISIF should not be assessing whether it is better to enter into a lump sum agreement with the claimant now because, in the future, he or she might suffer an injury that puts ISIF on the hook for greater liability. That is, in fact, why ISIF was created – to pay benefits to a claimant who suffers a work injury that combines with a pre-existing condition that renders him or her totally and permanently disabled. Settling a case prematurely (*i.e.* before there is some amount of evidence that the claimant is actually totally and permanently disabled and unable to return to work) as a "business decision" does not follow the intent for the creation and purpose of the ISIF.

[8] As ISIF's counsel stated in a brief submitted in another case presently before the Court (*Hagadone Corp. v. ISIF*, Docket No. 34335) "ISIF liability only arises upon a finding that there was, in fact, a manifest permanent, pre-existing physical impairment which combined with the last industrial accident to render the claimant permanently and totally disabled." Counsel affirmed that statement in oral argument in that case on February 13, 2009.

[9] These issues were recognized by Commissioner Maynard in his dissent:

> The majority would have you believe that a claimant's assertion of total and permanent disability is adequate information for all parties, including the Commission, to proceed with the settlement. On the contrary, it is proper for the Commission "to consider the underlying merits of the [claimant's] claims when making its statutorily required determination as to whether the settlement agreements were 'for the best interest of all parties.' Without some preliminary inquiry into the merits of the claim, the Commission cannot properly judge whether an injured worker is surrendering a strong claim for too small a settlement, or whether the ISIF is unwisely satisfying spurious claims at great cost."

(quoting *Owsley v. Idaho Indus. Comm'n*, 141 Idaho 129, 137, 106 P.3d 455, 463 (2005).

10

that she was unable to work, that it was liable for a portion of her disability, that she had a pre-existing permanent physical impairment within the meaning of section 72-332, and that she was totally and permanently disabled. ISIF cannot deny each and every element required in order to invoke the provisions of section 72-332 and at the same time assert that by virtue of a lump sum settlement agreement the injured worker is precluded from making a claim under that section for a subsequent injury. ISIF's liability under section 72-332 is not invoked unless the four elements requisite to such a claim are found by the Commission to be present. If the Commission does not make the requisite findings, it has no authority or jurisdiction to hold ISIF liable on a claim. In this case, the Commission merely gave its stamp of approval to the Agreement, making no findings as to whether ISIF's liability under section 72-332 had been properly invoked. Without such findings, the Commission lacked statutory authority to approve the Agreement and its order purporting to do so is void.[10]

Although ISIF asserts that Wernecke will receive an unconscionable windfall if she is permitted to avoid the waiver, Wernecke argues that allowing her to keep the $6,500.00 already paid to her by ISIF in 1994 is not unconscionable. That amount did not compensate her for total and permanent disability, since there was no admission or determination that she was totally and permanently disabled. Wernecke does not expect a double recovery, she simply aims to bring her current claim against ISIF and, if she succeeds in showing the Commission that she is

---

[10] Although ISIF asserts that Wernecke is attempting an impermissible collateral attack of the Commission's order approving the Agreement, we disagree because we find the order to be void. A void judgment can be attacked at any time. *Burns v. Baldwin*, 138 Idaho 480, 486, 65 P.3d 502, 508 (2003). "A void judgment . . . may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. . . . It may be attacked by a person adversely affected by it, in any proceeding, direct or collateral, and at any time." *Martin v. Soden*, 81 Idaho 274, 281, 340 P.2d 848, 852 (1959) (quoting 30A Am. Jur. *Judgments* § 45). A judgment is void if there is some jurisdictional defect in the court's authority to enter the judgment, either because the court lacks personal jurisdiction or because it lacks jurisdiction over the subject matter of the suit. *Hartman v. United Heritage Prop. & Cas. Co.*, 141 Idaho 193, 197, 108 P.3d 340, 344 (2005); *see also Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984) ("[A] judgment by a tribunal without authority, or which exceeds or lies beyond its authority, is necessarily void, and may be shown to be so in collateral proceedings, even though it be a court of general jurisdiction, because no authority derived from the law can transcend the source from whence it came.") (quoting *Wright v. Atwood*, 33 Idaho 455, 462, 195 P. 625, 627 (1921)). An administrative agency is limited to the power and authority granted it by the legislature. *Welch v. Del Monte Corp.*, 128 Idaho 513, 514, 915 P.2d 1371, 1372 (1996). Orders by an administrative agency which authorize something prohibited by the statute are not merely erroneous, but are void. C.J.S. *Public Administrative Law & Procedure* § 122. Therefore, because we determine that the Agreement approved by the Commission violates the Act, and the Commission is not authorized to approve agreements that violate the Act, the Commission acted outside its statutory authority and the Agreement is void and subject to collateral attack.

permanently and totally disabled, then ISIF's liability for total and permanent disability can be properly apportioned and ISIF will be credited for the $6,500.00 it already paid. *See, e.g., Southern v. Dep't of Labor & Indus.*, 236 P.2d 548, 551 (Wash. 1951) ("If the claimant is classified as totally permanently disabled, the nine hundred dollars already paid to him must be considered as an advance on the award to which he is entitled by virtue of this classification."). Therefore, should Wernecke be determined on remand to be totally and permanently disabled, ISIF will be credited the $6,500.00 already paid.[11]

### C. Because the Agreement Violates the Act, the Common Law Doctrines of Waiver and Estoppel do not Bar Wernecke's Current Claim

Wernecke argues that the Commission erred by holding that the common law doctrines of quasi-estoppel and waiver bar her from filing her current claim against ISIF because section 72-318(2) renders the Agreement void. ISIF maintains that Wernecke's decision to enter into the Agreement amounted to a waiver of any claims arising from future injuries. ISIF also claims that the doctrine of quasi-estoppel bars Wernecke from seeking benefits, since such a stance is contrary to the one she previously took when signing the Agreement.

Waiver is a voluntary, intentional relinquishment of a known right or advantage. *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992). The doctrine of quasi-estoppel precludes a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him or her. *Mitchell v. Zilog*, *Inc.*, 125 Idaho 709, 715, 874 P.2d 520, 526 (1994).

However, neither of these doctrines applies in the case of a contract that violates the law. If a contract is illegal and void, the court will leave the parties as it finds them and refuse to enforce the contract. The contract cannot be treated as valid by invoking waiver or estoppel. *Whitney v. Cont'l Life & Accident Co.*, 89 Idaho 96, 105, 403 P.2d 573, 579 (1965). Therefore, because the Agreement was illegal and violative of the Act, ISIF cannot rely on the doctrines of waiver and estoppel to enforce the Agreement against Wernecke. Absent limited circumstances not present here, this Court will not enforce an illegal contract, regardless of the fact that the

---

[11] On the other hand, should Wernecke be determined ineligible for ISIF benefits, she will be required to repay the $6,500.

arties knowingly entered into that contract.[12]

### D. The Doctrine of *Res Judicata* is Inapplicable

ISIF insists that the doctrine of *res judicata* bars Wernecke's current claim. Wernecke maintains that the doctrines of *res judicata* and collateral estoppel do not bar her from asserting her claim against ISIF. The doctrine of *res judicata* covers both claim preclusion – true *res judicata* – and issue preclusion – collateral estoppel. Each will be considered in turn.

### 1. *Res Judicata* Does not Bar Wernecke's Claim

Wernecke argues that because the Commission made no determination that she was totally and permanently disabled, and ISIF specifically denied that she was, *res judicata* cannot bar her current claim. Additionally, no claims stemming from the future injury were actually adjudicated by the Commission because the injury had not occurred yet. Further, Wernecke argues that if the final judgment on the merits in the prior litigation is void, she cannot now be precluded from raising the issue in her current claim. ISIF argues that Wernecke is trying to litigate the same claim as in the prior suit, namely, her right to worker's compensation benefits against ISIF, which arises only in the event of total and permanent disability.

A valid final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim. *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002). Claim preclusion, or *res judicata*, bars a subsequent action between the same parties upon the same claim. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007).

In order for claim preclusion to bar a subsequent action there are three requirements: (1) same parties; (2) same claim; and (3) a valid final judgment. *Id.* at 124, 157 P.3d at 618. Claim preclusion generally bars adjudication not only on the matters offered and received to defeat the claim, but also as to matters relating to the claim which might have been litigated in the first suit. *Id.* at 126, 157 P.3d at 620. However, Idaho Code § 72-718 varies the doctrine of *res judicata* as applied to worker's compensation cases. *See Sund v. Gambrel*, 127 Idaho 3, 7, 896 P.2d 329,

---

[12] This Court has recognized a certain limited exception to the illegality doctrine when public policy requires that some relief be granted. *Farrell v. Whiteman*, Docket No. 34383 (Jan. 22, 2009). Additionally, when parties are not "in pari delicto" or when fraud, undue influence, or duress are present relief may be granted to the innocent party. *Barry v. Pac. W. Constr., Inc.,* 140 Idaho 827, 833, 103 P.3d 440, 446 (2004). Finally, this Court has allowed some relief to insureds who signed void insurance contracts, in cases where unenforceability would "defeat the purpose for which a statute has been enacted." *Id.*

333 (1995). Decisions by the Commission are conclusive only as to matters *actually adjudicated*, not as to all matters which could have been adjudicated. *Id.*; *see also Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 720-21, 682 P.2d 1263, 1267-68 (1984).

Because we have determined that the Agreement and ensuing order were void, there is no "valid final judgment," and *res judicata* does not bar the present claim.

### 2. Collateral Estoppel Does not Bar Wernecke's Claim

Wernecke claims that the issue of ISIF's liability regarding future injuries was not, and could not have been decided. She emphasizes that a future claim for compensation involves a new injury with new facts, the merits of which could not be considered before they even occurred. Additionally, she alleges that the issue of her total and permanent disability could not have been addressed by the Agreement because ISIF denied that she was totally and permanently disabled. Wernecke insists that, if the Agreement and the judgment are void, her claim cannot be barred by collateral estoppel, since the doctrine applies only when there is a valid underlying judgment.

ISIF claims that the issue to be estopped is Wernecke's ability to raise new claims of total disability against ISIF – not the future injury itself or the facts surrounding that injury. Thus, ISIF maintains, since the issue regarding Wernecke's ability to raise a second claim of total disability against ISIF has been fully litigated and actually decided, Wernecke is barred from re-litigating this issue.

Collateral estoppel, or issue preclusion, protects litigants from litigating an identical issue with the same party or its privy. *Ticor Title*, 144 Idaho at 123, 157 P.3d at 617. Five elements are required in order for issue preclusion to bar the relitigation of an issue determined in a prior proceeding, but only one is relevant in this case. One of the five elements is that there was a final judgment on the merits in the prior litigation. *Id.* Whether collateral estoppel bars the litigation of an issue is a question of law which we freely review. *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 617, 114 P.3d 974, 987 (2005). In this case, the Agreement and order were void and cannot be the basis for imposing collateral estoppel because there is no valid final judgment.

### III.

Because the Agreement violates the Act and because the Commission's order is void, we vacate the Commission's decision and remand the case for further proceedings.

Justices BURDICK, W. JONES and HORTON, and Justice Pro Tem TROUT CONCUR.

14